UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VANDYKE JOHNSON,<br><br>                         Plaintiff,<br><br>          -against-<br><br>CITY OF NEW YORK; N.Y.P.D. OFFICER RANDAZZO, Badge No. 959119; N.Y.P.D. OFFICER HOTONIEL DIAZ; JOHN DOE #1; JOHN DOE #2; RACHAEL GARCIA; WANDALY TORRES; THE NEW YORK CITY DEPARTMENT OF EDUCATION; DIANA ALMA, CPS Worker; and DAVID A. HANSELL, Commissioner of Children's Services,<br><br>                         Defendants. | 20-CV-3083 (LLS)<br><br>ORDER TO AMEND |

LOUIS L. STANTON, United States District Judge:

Plaintiff, appearing *pro se*, brings this action under 42 U.S.C. § 1983, asserting claims arising from his arrests on charges of assault and child endangerment and violating a temporary restraining order. He also brings claims against the principal and parent coordinator of his child's school, alleging that they called the police when he sent his cousin to pick up the child from school, even though Plaintiff had some type of court order.

By order dated April 17, 2020, the Court granted Plaintiff's request to proceed without prepayment of fees, that is, *in forma pauperis*. For the reasons set forth below, the Court grants Plaintiff leave to file an amended complaint within sixty days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an *in forma pauperis* complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B);

see *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

## BACKGROUND

The following allegations are from Plaintiff Van Dyke Johnson's complaint. On August 22, 2019, Plaintiff and his wife both arrived home at about 3:00 p.m. (ECF 2 at 6, ¶ 26). A

neighbor who had been "monitoring" Plaintiff's children, aged 15 and 6 years old, told Plaintiff that the 15-year-old child was "using corporal punishment" against the younger child. Plaintiff and his wife had a "verbal dispute," and the neighbor suggested that they "take [a] breather." (*Id.*).

Later that day, Plaintiff called his wife's cell phone to "check on her whereabouts and safety," and a police officer answered it and informed him that his wife and children were at the police station. (*Id.* at ¶ 27). Plaintiff took a taxi to the 33rd Precinct, but he was not permitted to see his wife or children. (*Id.* at ¶ 29). Officers then asked Plaintiff if he was willing to answer questions, but he declined. (*Id.* at ¶ 28).

Police Officer Randazzo wrote a police report stating that the fifteen-year-old "suffered redness to her neck, scratches on her ankle and was dragged out of the bedroom." (*Id.* at ¶ 32). Both Officer Randazzo and Police Officer Hotoniel Diaz took photos of the injuries (*id.* at ¶¶ 33, 40), and they arrested Plaintiff on charges of endangering the welfare of a child, assault in the third degree, and harassment, (*id.* at ¶ 33, 38). Officer Diaz "stated to A.C.S. that he personally observed scratches and bruises on or about [the child's] neck." (*Id.* at ¶ 40). Plaintiff alleges that he did not abuse his children and that he "is accusing" Randazzo and Diaz of fabricating evidence. (*Id.* at ¶¶ 36, 41.)

The following day, Diana Alma, a child protective services worker for the Administration for Children's Services (ACS) had a pediatrician at New York Presbyterian Hospital examine the children in the emergency room. (*Id.* at ¶ 45). The doctor "found no injuries or marks." (*Id.*) On August 28, 2019, Alma filed a neglect petition in Family Court "against Plaintiff." (*Id.* at ¶¶ 43, 62).

On November 25, 2019, the criminal charges against Plaintiff were dismissed. (*Id.* at ¶ 46). That same day, Plaintiff returned to the apartment where his wife and children were living; he states that he was "not aware of [and had not been] served with [the] outstanding protective order." (*Id.* at ¶ 47.) ACS worker Alma arrived at the residence to see Plaintiff's children. At some point, Alma "called 911." (*Id.* at ¶ 70). She returned an hour later with officers from the 33rd Precinct and a copy of an *ex parte* restraining order. John Doe #1 arrested Plaintiff even though Plaintiff "provided a copy of the dismissal of the criminal court case" for the August 22, 2019 child endangerment charges. (*Id.* at ¶ 52.)

On March 18, 2020, Alma testified in the Family Court that "there wasn't a need for the Plaintiff's family to go to the emergency room." (*Id.* at ¶ 61).[1] On this basis, Plaintiff contends that Alma "knowingly provided false information" when she filed the neglect petition in August 2019. (*Id.* at ¶ 62). Plaintiff asserts claims against Alma for abuse of process, false arrest, and "malicious prosecution of Plaintiff's State rights under New York Law." (*Id.* at ¶ 63). Plaintiff contends that ACS Commissioner Hansell is "vicariously liable" for Alma's conduct. (*Id.* at ¶¶ 65-68).

Plaintiff also brings claims against individuals affiliated with his child's public school. Plaintiff had a court order permitting him to see his child under conditions that he does not specify. (*Id.* at ¶ 75). Defendant Alma agreed that Plaintiff's cousin could pick up the daughter from school but failed to inform Defendant Torres, the school's parent coordinator, of this, and

---

[1] Plaintiff brought a prior suit arising out of the same incidents, seeking $1 million in damages and "emergency relief" in connection with the *ex parte* temporary restraining order and neglect petition. *See Johnson v. Alma*, No. 19-CV-8093 (CM) (S.D.N.Y. Oct. 15, 2019) (abstaining under *Younger v. Harris*, 401 U.S. 37 (1971), from exercising jurisdiction over the matter). In that action, Plaintiff attached a hospital report stating that on August 23, 2019, "Your child was seen in the emergency room for neck pain. You can use ibuprofen as needed for pain." *Johnson v. Alma*, No. 19-CV-8093 (ECF 4) (Unsigned Order to Show Cause at 8).

Torres did not allow Plaintiff's cousin to leave with the child. (*Id.* at ¶¶ 75-81). On February 12,

2020, Plaintiff "was waiting outside of the school while Plaintiff's cousin was inside the school"

to pick up the child. (*Id.* at 84). Plaintiff called Torres and sent her text messages to demonstrate

that his cousin was "cleared . . . to pick up the Plaintiff's daughter." (*Id.* at ¶ 81).

Torres and Principal Rachael Garcia called 911, and Officer John Doe #2 arrived. He

arrested Plaintiff on charges of criminal contempt, "suggesting that the Plaintiff willfully violated

the order of protection." (*Id.* at ¶ 85). Plaintiff "is anticipating the dismissal of the criminal case

on May 14, 2020." (*Id.* at ¶ 87).

Plaintiff attaches to his complaint a disposition stating that on March 5, 2020, the

criminal contempt charges arising out of his November 25, 2019 arrest were dismissed on speedy

trial grounds. (*Id.* at 20.) He also attaches a certificate of disposition stating that the charges

against him in connection with the August 22, 2019 arrest were dismissed on November 25,

2019, when his motion to dismiss (on unspecified grounds) was granted. (*Id.* at 19).

Plaintiff brings this action against Officers Randazzo, Diaz, and John Does #1 and #2;

ACS Commissioner Hansell and ACS employee Alma; the City of New York and its Department

of Education (DOE); and Principal Garcia and Parent Coordinator Torres.[2] He seeks damages.

## DISCUSSION

### A.      False Arrest

A claim for false arrest under § 1983 looks to state law as a starting point to determine the

elements of a claim for false arrest. *See Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 925 (2017)

("[T]o flesh out the elements of this constitutional tort, we must look for 'tort analogies.'"); *see*

*also Lanning v. City of Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018) (holding that common law

principles are meant simply to guide rather than to control the definition of § 1983 claims and courts should not "mechanically apply" the law of New York State); *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003).

To establish a false arrest claim under New York law, a plaintiff must show that: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Liranzo v. United States*, 690 F.3d 78, 95 (2d Cir. 2012). An arrest is privileged if it is based on probable cause. *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest.") (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted).

Officers have probable cause to arrest when they have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). Thus, if "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest," the arrest is privileged, and the plaintiff cannot state a claim for false arrest. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). "Probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States*, 25 F.3d 98, 102 (1994). When information is received from a putative victim or an eyewitness, probable cause exists, unless the circumstances raise doubt as to the person's veracity. *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995).

1.      August 22, 2019 Arrest

Based on Plaintiff's allegations about the August 22, 2019 arrest, "the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Devenpeck*, 543 U.S. at 152. Plaintiff alleges that Officers Diaz and Randazzo arrested him after his wife and child went to the police station, the officers observed that one of the children had redness and scratches, and were informed – correctly or not – that Plaintiff had dragged the child out of the bedroom. The facts alleged demonstrate that Officers Diaz and Randazzo had probable cause to arrest Plaintiff. Even if Plaintiff's version of events turned out to be true – that Plaintiff had not dragged the child from the bedroom, or, as Plaintiff seems to imply, that one child had injured the other – the officers were not required to ascertain the truth of Plaintiff's claims before making an arrest. *See Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that a police officer is "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."). Plaintiff's allegations are insufficient to suggest that the officers had reason to doubt the victim's version of events and Plaintiff therefore fails to state a § 1983 claim on which relief can be granted for false arrest.

2.      November 25, 2019

Plaintiff alleges that on November 25, 2019, Defendant Alma and Police Officer John Doe #1 came to the house with a copy of the *ex parte* temporary restraining order (TRO). The officer arrested Plaintiff for violating the TRO, despite the fact that Plaintiff showed him the certificate of disposition demonstrating that the criminal charges against him for child abuse had been dismissed. (ECF 2 at ¶ 51).

Dismissal of the criminal charges against Plaintiff has no automatic effect on the validity of the TRO. Moreover, Plaintiff alleges that the TRO was "outstanding" (id. at ¶ 47), not that the Family Court had modified or vacated the TRO. Plaintiff's allegations thus show that there was

probable cause to arrest him on charges of violating the TRO requiring him to stay away from the home and children.

Plaintiff also argues that at the time of the incident, he had not been served with the *ex parte* TRO. This, however, is not an issue that the police officer was required to resolve on the spot before arresting Plaintiff. *Curley*, 268 F.3d at 70 ("[T]he arresting officer does not have to prove plaintiff's version wrong before arresting him."). Instead, at hearings on the criminal charges, Plaintiff could raise the argument that he did not knowingly violate the order. Plaintiff's allegations in connection with his November 25, 2019 arrest therefore fail to state a claim for false arrest.

    3.    February 12, 2020 arrest at school

On February 12, 2020, Officer John Doe #2 arrested Plaintiff outside his child's school on charges of violating an order of protection. (ECF 2 at ¶ 85). Plaintiff alleges that "Defendant Torres and Principal Rachael Garcia called 911," and the police officer understood from that phone call that "the Plaintiff willfully violated the order of protection." (*Id.* at ¶ 85). Plaintiff's criminal proceedings arising from this incident remain pending. (*Id.* at ¶ 87).

If criminal proceedings are pending when the plaintiff brings a § 1983 false arrest suit for damages that could potentially impugn a future conviction, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007). But a false arrest claim may proceed while charges are pending. *See Vallen v. Connelly*, 36 Fed. App'x 29, 31 (2d Cir. 2002) (holding that "the termination of proceedings in favor of the accused was not an element of a claim for false arrest"). Here, the Court elects not stay this action at present because Plaintiff's allegations fail to state a claim that he suffered a false arrest on February 12, 2020.

Based on Plaintiff's allegations, the information known to police officer John Doe #2 – that school officials had called 911 to report that Plaintiff was attempting to pick up his child despite a TRO directing Plaintiff to stay away– provided probable cause to arrest. Even if Plaintiff attempted to demonstrate to John Doe #2 that he was not in violation of the TRO by showing an unspecified "court order" or explaining that the ACS worker had failed to notify the school that his cousin had permission, this does not negate probable cause. "Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989). Plaintiff's allegations thus fail to state a claim against John Doe #2 for false arrest.

The Court also considers whether Defendants Torres or Garcia can be liable for false arrest arising out of this incident. A "complainant can be held liable for false arrest if the complainant intentionally provided false information to instigate an arrest by law-enforcement officials, or had no reasonable basis for the report." *Biswas v. City of New York*, 973 F. Supp. 2d 504, 519 (S.D.N.Y. 2013). But if a civilian complainant "had a reasonable basis" for the belief that a person was committing a crime, this suffices to defeat a false arrest claim "even if a civilian complainant is ultimately incorrect in his belief as to whether a person is committing a crime." *Id.* (citing *TADCO Const. Corp. v. Dormitory Auth. of State of New York*, 700 F. Supp.2d 253, 275 (E.D.N.Y. 2010)); *see also Pacicca v. Stead*, 456 Fed. Appx. 9, 12 (2d Cir. 2011) (existence of order of protection made it "reasonable" in that case to believe that a crime had been committed).

Plaintiff alleges that Defendant Alma failed to inform the school's parent coordinator that Plaintiff's cousin had permission to pick up the child. (ECF 2 at ¶¶ 75-81). Plaintiff's allegations suggest that school officials had a "reasonable basis" for the belief that Plaintiff was violating the TRO. Even if Defendants Torres and Garcia were ultimately incorrect that Plaintiff had violated the TRO, there is no allegation that they made a knowingly false report or lacked any reasonable basis for calling the police. Plaintiff thus fails to state a § 1983 claim on which relief can be granted against Defendants Torres and Garcia for false arrest.

**B.      Malicious Prosecution**

To state a claim for malicious prosecution, a plaintiff must allege facts showing that: (1) the defendant initiated or continued a prosecution against the plaintiff; (2) the defendant lacked probable cause to commence the proceeding or believe the proceeding could succeed; (3) the defendant acted with malice; and (4) the prosecution terminated in the plaintiff's favor. *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002). Moreover, "a plaintiff asserting a malicious prosecution claim under § 1983 must . . . show that the underlying criminal proceeding ended in a manner that affirmatively indicates his innocence." *Lanning v. City of Glens Falls*, 908 F.3d 19, 22 (2d Cir. 2018).

Here, Plaintiff alleges that he faced criminal charges arising from three separate incidents. (ECF 2 at 2). His allegations show, however, that none of the criminal charges "ended in a manner that affirmatively indicates his innocence." *Lanning,* 908 F.3d at 22. The November 25, 2019 charges were dismissed on speedy trial grounds, which does not indicate Plaintiff's innocence. (ECF 2 at 20). The charges arising from the August 22, 2019 incident were dismissed when an unspecified motion was granted, but Plaintiff gives no information about the grounds for relief and thus does not show that the proceeding established his innocence. (*Id.* at 19.) Finally, Plaintiff alleges that the charges against him arising out of his February 12, 2020

interactions with his child's school are still pending. (*Id.* at ¶ 87). Plaintiff therefore fails to state a claim for malicious prosecution in connection with any of these three incidents.

**C.      Fabrication of Evidence**

When a government official manufactures false evidence against an accused, and the use of that fabricated evidence results in the deprivation of the accused's liberty, the official infringes the accused's constitutional right to a fair trial in a manner that may be redressable in a § 1983 action for damages. *McDonough v. Smith*, 139 S. Ct. 2149, 2159 (2019); *Zahrey v. Coffey*, 221 F.3d 342, 348-350 (2d Cir. 2000).

To state a claim for the denial of a fair trial based on the fabrication of evidence, a plaintiff must plausibly allege that "an (1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 130 (2d Cir. 1997)). Testimony that is incorrect or simply disputed should not be treated as fabricated merely because it turns out to have been wrong. *Halsey v. Pfeiffer*, 750 F.3d 273, 295 (3d Cir. 2014).

Here, Plaintiff contends that he "is accusing Defendant Diaz [and Defendant Randazzo] of fabricating evidence," including the "'pictures' and 'bruising.'" (ECF 2 at ¶ 102.) To the extent that Plaintiff disputes that the child's injuries were attributable to him, this does not make the officers' statements that they observed scratches, or their photos of the injuries, fabricated evidence. Plaintiff also fails to allege any facts that could plausibly support a claim that Defendants Diaz and Randazzo fabricated the child's bruises or the photos of the injuries. Without more, Plaintiff fails to state a claim on which relief can be granted based on fabricated evidence.

**D.**      **Claims against Administration for Children's Services Defendants**

1.      *Younger* Abstention

"A federal court's obligation to hear and decide a case is virtually unflagging," *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (quotation marks and citations omitted), and even in the presence of parallel state proceedings, abstention from the exercise of federal jurisdiction is the "exception, not the rule." *Id.* at 81-82.[3]

Three exceptional circumstances justify abstention, including situations involving ongoing parallel (1)"state criminal prosecutions"; (2) "civil proceedings that are akin to criminal prosecutions"; or (3) civil proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts." *Id.* at 72. A "state-initiated proceeding to gain custody of children allegedly abused by their parents" is a civil proceeding akin to a criminal proceeding that comes within the second *Sprint* category. *Id.* at 79 (citing *Moore v. Sims*, 442 U.S. 415, 419–20 (1979)); *see also Kirschner v. Klemons*, 225 F.3d 227, 236 (2d Cir. 2000) ("The defining feature of *Younger* abstention is that even though either a federal or a state court could adjudicate a given claim, when there is an ongoing state proceeding in which the claim can be raised, and when adjudicating the claim in federal court would interfere unduly with the ongoing state proceeding, the claim is more appropriately adjudicated in state court.").

"The Supreme Court has declined to reach the issue whether *Younger* applies to claims for money damages, but has noted that even if it does, the federal suit should be stayed, rather than dismissed, if the money damages sought could not be obtained in the pending state proceeding." *Id.* at 238 (citing *Deakins v. Monaghan*, 484 U.S. 193, 201-03 (1988)). Thus,

---

[3] Abstention under the doctrine articulated in *Younger v. Harris*, 401 U.S. 37 (1971), is a "prudential limitation" grounded in considerations of comity rather than a "jurisdictional bar" derived from Article III of the Constitution. *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006).

"abstention and dismissal are inappropriate when damages are sought, even when a pending state proceeding raises identical issues and we would dismiss otherwise identical claims for declaratory and injunctive relief, but . . . a stay of the action pending resolution of the state proceeding may be appropriate." *Id.*

Here, it is unclear if the Family Court neglect proceedings initiated against Plaintiff are ongoing. Because Plaintiff seeks damages, rather than only injunctive relief, the Court proceeds to address his claims seeking damages from Defendant Alma for malicious abuse of process. *See, e.g.*, *Jones v. Cnty. of Westchester*, 678 F. App'x 48, 50 (2d Cir. 2017) (holding that abstention was inappropriate for § 1983 claim seeking money damages where "[t]here appears to be little chance that a potential award of money damages would interfere with or disrupt the permanency proceedings that are ongoing in Westchester County Family Court.").

Plaintiff alleges Defendant Diana Alma submitted a sworn petition in the Family Court stating that he "dragged his stepdaughter by the collar and [she] suffered scratches and bruises." (*Id.* at ¶¶ 43-44). He further contends that Alma engaged in abuse of process because she "knowingly provided false information" when she filed the neglect petition. (*Id.* at ¶ 62). Plaintiff explains his reasoning as follows:

> On March 18, 2020, Defendant Alma stated under oath in Family Court [that] 'there wasn't a need for the Plaintiff's family to go to the emergency room' on August 23, 2019. Because of the Defendant Alma's revelation at the hearing, Defendant Alma knowingly provide[d] false information to the Family Court back on August 28, 2019, when she filed a petition for Neglect against the Plaintiff.

(*Id.* at ¶¶ 61-62).

Malicious abuse of process can support liability under § 1983. *Savino v. City of New York*, 331 F.3d 63, 76–77 (2d Cir. 2003) (claim involving abuse of criminal proceedings). In New York, "a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of

some act (2) with intent to do harm without excuse of justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Id.* at 76. Thus, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." *Id.* at 77.

Here, there are no allegations that Defendant Alma pursued neglect proceedings to achieve a collateral purpose. Moreover, contrary to Plaintiff's assertions, Defendant Alma's statement that an urgent, emergency room visit was not required to treat the child's injuries does not undermine the neglect petition, which does not require that children have suffered injuries requiring urgent medical treatment. *See* N.Y. Fam. Ct. Act § 1012 (a neglected child is a child "whose physical, mental or emotional condition has been impaired . . . as a result of the failure of his parent . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship . . ."). Plaintiff cannot state a claim against Defendant Alma for abuse of process in the absence of allegations that she pursued the neglect proceedings to achieve a collateral purpose, and the Court therefore dismisses Plaintiff's abuse of process claim for failure to state a claim on which relief can be granted.

2.    ACS Commissioner Hansell

Plaintiff contends that ACS Commissioner Hansell is "vicariously liable" for Alma's conduct. (*Id.* at ¶¶ 65-68).To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts showing the defendants' direct and personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)). A defendant may not be held liable

14

under § 1983 solely because that defendant employs or supervises a person who violated the

plaintiff's rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Government officials may not

be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat

superior."). An individual defendant can be personally involved in a § 1983 violation if:

> (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of [the plaintiff] by failing to act on
> information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.[4]

Plaintiff does not allege any facts showing that Defendant Hansell was personally

involved in the events underlying Plaintiff's claims. The allegations thus fail to state a claim on

which relief may be granted against Defendant Hansell in his personal capacity.

Moreover, as an agency of the City of New York, ACS cannot be sued in its own name

and must instead be sued in the name of the City of New York. *See* N.Y. City Charter ch. 17,

§ 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law

shall be brought in the name of the city of New York and not in that of any agency, except where

otherwise provided by law."); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

Plaintiff has named the City of New York as a defendant, and Plaintiff's official-capacity claims

against ACS Commissioner Hansell can therefore proceed against the City of New York. *See*

*Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 284 (E.D.N.Y. 2010) ("Based upon the

---

[4] "Although the Supreme Court's decision in [*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)] may
have heightened the requirements for showing a supervisor's personal involvement with respect
to certain constitutional violations," the Second Circuit has not yet examined that issue. *Grullon
v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

understanding that it is duplicative to name both a government entity and the entity's employees in their official capacity, courts have routinely dismissed corresponding claims against individuals named in their official capacity as redundant and an inefficient use of judicial resources.").

### E.    Municipal Liability

Plaintiff sues the City of New York based on alleged constitutional violations arising from his contact with employees of the NYPD, the DOE, and the ACS. When a plaintiff sues a municipality such as the City of New York under § 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality *itself* caused the violation of the plaintiff's rights. *See Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation.") (quoting *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 692 (1978)); *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a § 1983 claim against a municipality, the plaintiff must allege facts showing (1) the existence of a municipal policy, custom, or practice, and (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights.  *See Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 403 (1997).

Plaintiff states that he is suing the City of New York because it is "responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters . . . ." (ECF 2 at ¶ 5). But Plaintiff has not identified any particular policy or practice of the City of New York that caused a violation of his rights in connection with any of his three arrests.

Plaintiff also sues the City of New York DOE, alleging that it allows "teachers to falsely call 911 [where] a parent, such as plaintiff, . . . had a court order to be with a resource and to be with his daughter after school hours." (*Id.* at ¶ 100.) Plaintiff's allegations are insufficient to plausibly allege that the DOE has a policy authorizing teachers to make false statements to police. Instead, Plaintiff's allegations at best plead facts showing that an ACS employee did not notify the school that he had authorization to pick up his child. (ECF 2 at ¶ 78) ("Defendant Alma did not inform Defendant Torres of the approved resource to pick up the Plaintiff's daughter."). Such facts do not state a claim that the City of New York DOE has a policy that caused a violation of his constitutional rights.

Finally, Plaintiff alleges that ACS "developed [an] unconstitutional policy for allowing workers such as Defendant Alma to fabricate evidence; false arrest; malicious prosecution of the Plaintiff and his family." (ECF 2 at ¶ 67). He states that "Defendant Hansell is the policymaker for ACS and is responsible for its agents." (*Id.* at ¶ 68). However, a single incident cannot be the basis for a claim for municipal liability where the incident involves only actors below the policy-making level. *See, e.g., Ricciuti v*, 941 F.2d at 123. Moreover, "the simple recitation that there was a failure to train municipal employees does not suffice to allege that a municipal custom or policy caused the plaintiff's injury." *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir.1993), *overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993).  In sum, Plaintiff's allegations do not state a claim against the City of New York based on the conduct of its police officers, or its school or child protective services employees.

## LEAVE TO AMEND

Plaintiff is granted leave to amend his complaint to detail his claims insofar as he can plead facts that state a claim under the standards set forth above. In the statement of claim,

Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant named in the amended complaint. Plaintiff is also directed to provide the addresses for any named defendants. To the greatest extent possible, Plaintiff's amended complaint must:

a)  give the names and titles of all relevant persons;

b)  describe all relevant events, stating the facts that support Plaintiff's case including what each defendant did or failed to do;

c)  give the dates and times of each relevant event or, if not known, the approximate date and time of each relevant event;

d)  give the location where each relevant event occurred;

e)  describe how each defendant's acts or omissions violated Plaintiff's rights and describe the injuries Plaintiff suffered; and

f)  state what relief Plaintiff seeks from the Court, such as money damages, injunctive relief, or declaratory relief.

Essentially, the body of Plaintiff's amended complaint must tell the Court: who violated his federally protected rights; what facts show that his federally protected rights were violated; when such violation occurred; where such violation occurred; and why Plaintiff is entitled to relief. Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to maintain must be included in the amended complaint.

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended

Complaint," and label the document with docket number 20-CV-3083 (LLS). An Amended

Complaint form is attached to this order.

      If Plaintiff chooses to file an amended complaint, he may wish to reach out to the New

York Legal Assistance Group's Legal Clinic for Pro Se Litigants in the Southern District of New

York, which is a free legal clinic staffed by attorneys and paralegals to assist those who are

representing themselves in civil lawsuits in this Court. A copy of a flyer with details of the clinic

is attached to this order.

      No summons will issue at this time. If Plaintiff fails to file an amended complaint within

the time allowed, and he cannot show good cause to excuse such failure, the complaint will be

dismissed for failure to state a claim upon which relief may be granted.

SO ORDERED.

Dated:   May 5, 2020
         New York, New York

                                             _Louis L. Stanton_
                                             Louis L. Stanton
                                               U.S.D.J.

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.


-against-

_____

_____

_____

_____

Write the full name of each defendant. If you need more
space, please write "see attached" in the space above and
attach an additional sheet of paper with the full list of
names. The names listed above must be identical to those
contained in Section II.

_____CV_____
(Include case number if one has been
assigned)

# AMENDED

# COMPLAINT

Do you want a jury trial?
☐ Yes    ☐ No

---

## NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed
with the court should therefore _not_ contain: an individual's full social security number or full
birth date; the full name of a person known to be a minor; or a complete financial account
number. A filing may include _only_: the last four digits of a social security number; the year of
an individual's birth; a minor's initials; and the last four digits of a financial account number.
See Federal Rule of Civil Procedure 5.2.

## I.   BASIS FOR JURISDICTION

Federal courts are courts of limited jurisdiction (limited power). Generally, only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case arising under the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one State sues a citizen of another State or nation, and the amount in controversy is more than $75,000, is a diversity case. In a diversity case, no defendant may be a citizen of the same State as any plaintiff.

What is the basis for federal-court jurisdiction in your case?

☐   **Federal Question**

☐   **Diversity of Citizenship**

### A.   If you checked Federal Question

Which of your federal constitutional or federal statutory rights have been violated?

_____

_____

_____

_____

### B.   If you checked Diversity of Citizenship

#### 1.   Citizenship of the parties

Of what State is each party a citizen?

The plaintiff , _____ , is a citizen of the State of
            (Plaintiff's name)

_____
(State in which the person resides and intends to remain.)

or, if not lawfully admitted for permanent residence in the United States, a citizen or subject of the foreign state of

_____ .

If more than one plaintiff is named in the complaint, attach additional pages providing information for each additional plaintiff.

If the defendant is an individual:

The defendant, _____, is a citizen of the State of
                        (Defendant's name)

_____

or, if not lawfully admitted for permanent residence in the United States, a citizen or
subject of the foreign state of

_____.

If the defendant is a corporation:

The defendant, _____, is incorporated under the laws of

the State of _____

and has its principal place of business in the State of _____

or is incorporated under the laws of (foreign state) _____

and has its principal place of business in _____.

If more than one defendant is named in the complaint, attach additional pages providing
information for each additional defendant.

## II.  PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional
pages if needed.

_____
First Name                    Middle Initial          Last Name

_____
Street Address

_____
County, City                            State                    Zip Code

_____        _____
Telephone Number                        Email Address (if available)

## B.   Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. Attach additional pages if needed.

Defendant 1: _____

                First Name               Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                State          Zip Code

Defendant 2: _____

                First Name               Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                State          Zip Code

Defendant 3: _____

                First Name               Last Name

_____

Current Job Title (or other identifying information)

_____

Current Work Address (or other address where defendant may be served)

_____

County, City                State          Zip Code

Defendant 4: _____

          First Name                Last Name

          _____

          Current Job Title (or other identifying information)

          _____

          Current Work Address (or other address where defendant may be served)

          _____

          County, City              State          Zip Code

## III. STATEMENT OF CLAIM

Place(s) of occurrence: _____


Date(s) of occurrence: _____

## FACTS:

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and what each defendant personally did or failed to do that harmed you. Attach additional pages if needed.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

**IV. RELIEF**

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

## V.  PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| | |
|---|---|
| Dated | Plaintiff's Signature |

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

I have read the Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☐ Yes   ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.

# <u>Notice For Pro Se Litigants</u>



As a public health precaution, the New York Legal Assistance Group's Legal Clinic for Pro Se Litigants has temporarily suspended all in-person client meetings as of Tuesday, March 17, 2020.

Limited scope legal assistance will continue to be provided, but only by appointment and only over the phone. During this time, we cannot assist walk-in visitors to the clinic.

If you need the assistance of the clinic, please call <u>212-659-6190</u> and leave a message, including your telephone number, and someone will get back to you as soon as possible. If you do not leave a message with your telephone number, we cannot call you back.

Please be patient because our responses to your messages may be delayed while we transition to phone appointments.

