**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VANDYKE JOHNSON,                 :

                                :

             Plaintiff,         :

                                  :

        -against-         :        MEMORANDUM DECISION

                                :           AND ORDER

THE CITY OF NEW YORK, DIANA ALAMA,  :

CPS Worker, SHEENA BLAISE, CPS Worker, and  :     20 Civ. 3083 (GBD) (BCM)

DAVID A. HANSELL, Commissioner of the    :

Administration of Child Services,         :

                                :

            Defendants.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

GEORGE B. DANIELS, United States District Judge:

     *Pro se* Plaintiff Vandyke Johnson brings this action against Defendants the City of New York, Diana Alama, a Child Protective Services ("CPS") worker, Sheena Blaise, another CPS worker, and David A. Hansell, the Commissioner of the New York City Administration of Child Services, alleging various violations of federal and state law stemming from a child services matter involving Plaintiff and his family. (*See generally* Third Amended Complaint ("TAC"), ECF No. 72.)  Defendants move to dismiss Plaintiff's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Notice of Mot., ECF No. 76, at 1.)

     Before this Court is Magistrate Judge Barbara C. Moses's August 12, 2022 Report and Recommendation (the "Report"), recommending that Defendants' motion be granted and this action be dismissed. (*See generally*, Report, ECF No. 91.)  Magistrate Judge Moses advised the parties that failure to file timely objections to the Report would constitute a waiver of those objections on appeal.  (*Id.* at 31.)  Plaintiff filed timely objections on August 22, 2022 and supplemental objections on September 8, 2022. (Pl.'s Objs. to Mag. J.'s R. & R., ECF No. 92

("Pl.'s Objs."); Pl.'s Supp. Objs. to Mag. J.'s R. & R., ECF No. 95.)[1]  Subsequently, on September 15, 2022, Defendants filed a response to Plaintiff's initial and supplemental objections. (Defs.' Resp. to Pl.'s Objs. to Mag. J.'s R. & R. ("Defs.' Resp."), ECF No. 96.)

Having reviewed Magistrate Judge Moses's Report, Plaintiff's objections, and Defendants' response, this Court ADOPTS the Report in full.  Accordingly, Defendants' motion to dismiss is GRANTED and this action is dismissed.

## I.   FACTUAL BACKGROUND[2]

On August 22, 2019, Plaintiff was arrested on charges relating to "defamatory" allegations of child abuse after his step-daughter "A.O.M." filed a police report accusing Plaintiff of violently grabbing and dragging her across her bedroom.  (Report at 1–2; TAC ¶ 14.)  A.O.M. was taken to the police station and assisted in reporting the incident by her biological mother, Mercedes Johnson, with whom Plaintiff also shares another minor child, "V.J."  (Report at 1–2.)  The day after the alleged incident, Plaintiff was arraigned on charges of assault in the third degree, acting in a manner injurious to a child, and related crimes.  (Id. at 2.)  The arraigning court also issued a stay-away order of protection prohibiting Plaintiff from contacting A.O.M. or V.J.  (Id.)

On August 28, 2019, the Administration of Child Services ("ACS") filed a neglect petition against Plaintiff in Family Court based, according to Plaintiff, on "information from the Plaintiff's August 23, 2019 arrest, that produced no evidence, only false allegations."  (Report at 3; TAC ¶ 13.)  The neglect petition accused Plaintiff of inflicting "excessive corporal punishment" on A.O.M. and alleged that A.O.M. and her younger sister (Plaintiff's biological daughter, V.J.) were

---

[1] Plaintiff's Supplemental Objections purport to provide support for a false arrest claim.  The operative complaint does not include a cause of action for false arrest.

[2] The relevant factual and procedural background is set forth in greater detail in the Report and is incorporated by reference herein.

"neglected children" within the meaning of the law.  (Report at 3.)  Defendant Alama was the Child Protective Services worker assigned to the investigation into A.O.M.'s allegations against Plaintiff and she verified the petition.  (*Id.* at 2–3.)  Plaintiff alleges that "defendants did not provide the family court of any evidence to support their allegations," and failed to include a report from another Child Protective Services worker, identified as "CPS Wade," that exonerated the Plaintiff of the abuse allegations.  (*Id.* at 9.)  Shortly after ACS filed the petition, the Family Court issued a temporary order of protection prohibiting Plaintiff from having any contact with A.O.M. or V.J. except in the presence of ACS or certain approved relatives, and barring him from the girls' home and schools until February 24, 2020.  (*Id.* at 5–6.)

On November 25, 2019, the criminal charges arising out of the August 22, 2019 incident were dismissed.  (Report at 6.)  Presumably under the assumption that the criminal charges and order of protection went hand-in-hand, once the charges were dismissed, Plaintiff's criminal defense attorneys advised him that there was no longer any order of protection in place.  (*Id.*)  In actuality, the family court order remained in effect.  (*Id.*)  Believing that no order of protection remained, however, Plaintiff returned to his children's residence.  (*Id.*)  After seeing Plaintiff there during a wellness visit, Defendant Alama called the police.  (*Id.*)  Plaintiff was arrested and spent eighteen hours in jail.  (*Id.*)

The criminal case stemming from Plaintiff's November 25, 2019 violation of the order of protection was dismissed on March 5, 2020 on speedy trial grounds.  (Report at 7.)  On February 12, 2020, Plaintiff was again arrested, this time outside of V.J.'s school for "criminal contempt" after the school principal "falsely called the police and falsely stated to the NYPD that Plaintiff was violating the Family Court's order."  (*Id.* at 7–8.)  That case was dismissed on May 12, 2020.  (*Id.* at 8.)  On August 3, 2021, ACS withdrew the neglect petition against Plaintiff.  (*Id.*)

On April 16, 2020, Plaintiff initiated the instant suit, alleging that his constitutional rights were violated by the Defendants in connection with his arrests and the family court proceedings. Plaintiff alleges that, "because of the Defendant of City of New York [sic] false allegations, the Plaintiff was forced out of his home subject to multiple arrests, embarrassment, defamation, and alienation of family." (Report at 8, 10.) On September 30, 2021, this Court adopted Magistrate Judge Barbara Moses's August 23, 2021 Report and Recommendation that Plaintiff's Second Amended Complaint ("SAC") be dismissed insofar as it asserted claims on behalf of Plaintiff's minor children. *See Johnson v. City of New York*, 2021 WL 4896477, at *6 (S.D.N.Y. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4479384 (S.D.N.Y. Sept. 30, 2021); (ECF No. 71). After Plaintiff filed the operative Third Amended Complaint, (ECF No. 72), which Defendants now move to dismiss, Magistrate Judge Moses issued an Order excising certain claims alleged therein as barred by this Court's September 30, 2021 ruling. (Report at 10.)

## II.   LEGAL STANDARDS

### A.   Reports and Recommendations

"Although a magistrate may hear dispositive pretrial motions, he may only submit proposed findings of fact and recommendations for disposition of the matter." *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990). The district court must review *de novo* the portions of a magistrate judge's report and recommendation to which a party properly objects. 28 U.S.C. § 636(b)(1)(C). However, the district court need not conduct a *de novo* hearing on the matter. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Instead, it is sufficient that the district court "arrive at its own, independent conclusion" regarding those portions of the report to which objections are made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (citation omitted).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citations omitted). The clear error standard also applies if a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (citation omitted). Clear error is present when "upon review of the entire record, [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *United States v. Snow*, 462 F.3d 55, 72 (2d Cir. 2006) (citation omitted). "A magistrate's ruling is contrary to law if it 'fail[s] to apply or misapplies relevant statutes, case law, or rules of procedure[.]'" *Thai Lao Lignite (Thai.) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (first alteration in original) (citation omitted).

**B.      Rule 12(b)(6) Failure to State a Claim**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must demonstrate "more than a sheer possibility that a defendant has acted unlawfully"; stating a facially plausible claim requires the plaintiff to plead facts that enable the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The factual allegations pled must therefore "be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A district court must first review a plaintiff's complaint to identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then considers whether the plaintiff's remaining well-pleaded factual allegations, assumed to be true, "plausibly give rise to an

entitlement to relief." *Id.*; *see also Targum v. Citrin Cooperman & Co.*, No. 12 Civ. 6909 (SAS), 2013 WL 6087400, at \*3 (S.D.N.Y. Nov. 19, 2013).  In deciding the 12(b)(6) motion, the court must also draw all reasonable inferences in the non-moving party's favor.  *See N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 119–20 (2d Cir. 2013).

## C. *Pro Se* Litigants

Submissions of *pro se* litigants are read liberally and interpreted to "raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).  Courts must also "afford *pro se* plaintiffs 'special solicitude' before granting motions to dismiss or motions for summary judgment." *Quadir v. N.Y. State Dep't of Labor*, 39 F. Supp. 3d 528, 536 (S.D.N.Y. 2014) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994)).

## III.   DEFENDANTS' MOTION TO DISMISS IS GRANTED

### A.   Plaintiff Continues to Lack Standing to Assert Claims on Behalf of His Children

In the operative Third Amended Complaint, Plaintiff predicates several of his claims on allegations that Defendants unconstitutionally performed an "invasive, non-routine nude examination" of his children without parental consent.  *(See e.g.*, TAC ¶¶ 96–101.)  As noted above, this Court has already held that Plaintiff may not vicariously assert a constitutional search and seizure claim on behalf of his children. *See Johnson*, 2021 WL 4896477, at \*6; (ECF No. 71); *see also Tenenbaum v. Williams*, 193 F.3d 581, 593 n. 13 (2d Cir. 1999) ("Fourth Amendment rights are personal rights, which, like some other constitutional rights, may not be vicariously asserted") (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)); *Southerland v. City of New York*, 667 F.3d 87, 103 (2d Cir. 2012) ("A Fourth Amendment child-seizure claim belongs only to the child, not to the parent."); *Hunter v. Child Protective Servs. of Niagara Cnty.*, No. 20

6

Civ. 18 (LJV) (MJR), 2021 WL 2368024, at *14 (W.D.N.Y. Feb. 22, 2021), *report and recommendation adopted sub nom. Hunter v. McMahon*, 2021 WL 1996772 (W.D.N.Y. May 19, 2021) (applying identical principle to New York State search and seizure claim). Notwithstanding this Court's prior ruling, the TAC continues to assert claims on behalf of Plaintiff's children, (TAC ¶¶ 83–86, 96–101, 115), and the Court is aware of no change in the law that makes them now colorable—a point Plaintiff concedes in his objections, (Pl.'s Objs. at 6). Plaintiff's TAC is therefore dismissed insofar as it is predicated on an alleged unlawful search and seizure of Plaintiff's minor children.[3]

**B.      Plaintiff's Malicious Prosecution Claim is Dismissed**

Plaintiff's First Cause of Action is based on his claim that Defendants maliciously prosecuted him when they filed the neglect petition against him in family court. In her Report, Magistrate Judge Moses concluded that Plaintiff may advance a malicious prosecution claim arising from his family court proceedings, but that the claim nevertheless fails for pleading deficiencies. (Report at 17–25.) As an initial matter, neither Plaintiff nor Defendants objected to that portion of the Report which found that Plaintiff may advance a malicious prosecution claim premised on a civil, family court proceeding and, seeing no clear error in that ruling, this Court adopts it. Plaintiff does object, however, to the Report's recommendation that his claim be dismissed for his failure to adequately plead a lack of probable cause or malice. Accordingly, this Court reviews those issues *de novo*.

**1.      Plaintiff Fails to Adequately Plead Lack of Probable Cause or Malice**

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment[] and establish the

---

[3] Plaintiff's Second, Fourth, and Sixth Causes of action are based, in part, on alleged wrongs to Plaintiff's children.

elements of a malicious prosecution claim under state law." *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002) (citations omitted).  To establish a malicious prosecution claim under New York law, a plaintiff is "required to show the following: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice, and (4) the matter terminated in plaintiff's favor." *Rentas v. Ruffin*, 816 F.3d 214, 220 (2d Cir. 2016) (quotation omitted).

Given a careful review of the pleadings, Plaintiff has not set forth two of the necessary four elements of his claim.  First, Plaintiff has failed to plausibly plead a lack of probable cause.  In the context of a malicious prosecution claim, probable cause "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (citation omitted).  "[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York." *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003).

Plaintiff's assertion that Defendants lacked probable cause to institute the family court proceedings is entirely undercut by the facts and circumstances alleged in the TAC and other documents Plaintiff has placed before this Court.  As noted in the Report, the neglect petition was based on the statements of A.O.M. herself, her mother, and her younger sister V.J., all of whom reported that Plaintiff had assaulted A.OM.  (Report at 22.)  Specifically, A.O.M. told NYPD and ACS officers that Plaintiff had grabbed her "by her sweatshirt and dragged her out of the bedroom and into the living room." (*Id.*)  This statement was corroborated by A.O.M.'s mother and V.J. (*Id.*)  A.O.M. further reported that she developed "pain around her neck" and "a hard time speaking" as a result of the incident, and that Plaintiff had been violent with her twice before, once

grabbing her by the hair to throw her out of the room and once striking her face and causing her lip to bleed. (*Id.*) This record clearly supports Defendants' initial finding of probable cause and filing of the neglect petition. *See, e.g., Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) ("When information is received from a putative victim or an eyewitness, probable cause exists."); *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) ("An arresting officer advised of a crime by a person who claims to be the victim … has probable cause to effect an arrest..."). In addition to A.O.M.'s complaint and her mother and sister's corroboration, Defendants' actions are reinforced by redness, scratches, and bruises NYPD officers and ACS caseworkers directly observed on A.O.M.'s neck following the alleged incident. (Report at 22.)

Further, as the Report recognizes, "the issuance of a temporary injunction or similar judicial recognition of the merit of the underlying case"—such as the order of protection issued by the family court in Plaintiff's case—"creates a presumption of probable cause and places upon the plaintiff the burden of pleading facts sufficient to overcome it." *Emanuel v. Griffin*, No. 13 Civ. 1806 (JMF), 2015 WL 1379007, at *9 (S.D.N.Y. Mar. 25, 2015) (quoting *Butler v. Ratner*, 210 A.D.2d 691, 693–94 (3d Dep't 1994)); *see also Grullon v. Admin. for Children's Servs.*, No. 18 Civ. 3129 (LJL), 2021 WL 981848, at *11 (S.D.N.Y. Mar. 16, 2021); *Boyd v. City of N.Y.*, 336 F.3d 72, 76 (2d Cir. 2003) (presumption of probable cause created by grand jury indictment). That presumption "is rebuttable, and may be overcome by evidence establishing that the [] witnesses 'have not made a complete and full statement of facts ... [,] that they have misrepresented or falsified evidence[,] ... or otherwise acted in bad faith.'" *Boyd*, 336 F.3d at 76 (quoting *Colon v.*

*City of New York*, 60 N.Y.2d 78, 82–83 (N.Y. 1983)). In the context of child-abuse proceedings, one court has held that the presumption of probable cause arising from a removal order may be rebutted where the petition for removal "was either intentionally or recklessly false." *Estiverne v. Esternio-Jenssen*, 833 F. Supp. 2d 356, 379 (E.D.N.Y. 2011).

Here, Plaintiff fails to rebut the presumption of probable cause created by the family court order of protection. Plaintiff's principal complaints are: first, that Defendants failed to consider that the marks on A.O.M.'s neck may have been the result of acanthosis nigricans, a medical condition that causes darkening of the skin in the armpits, groin, and neck and from which A.O.M. suffered; second, that ACS did not interview Plaintiff's babysitter; and third, that various portions of ACS's investigation notes identify A.O.M.'s injuries as non-serious. (Pl's. Opp. at 4–7.) As to Plaintiff's first and second arguments, "[an] alleged failure to conduct further investigation or apply all procedures that could have been followed ... is insufficient to overcome the presumption [of probable cause]." *Gil v. Cnty. of Suffolk*, 590 F.Supp.2d 360, 370 (E.D.N.Y. 2008). To the contrary, "once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (quotation omitted). With respect to his third argument, neither Plaintiff's complaint that A.O.M.'s injuries were deemed non-serious, nor any of the alleged omissions about which Plaintiff complains in his objections, (*see* Pl.'s Objs. at 6),[4] suggest that the submissions in the neglect petition were "intentionally or recklessly false," and as such, they do not rebut the presumption of probable cause afforded the neglect petition.

---

[4] Among other facts immaterial to resolution of the instant motion, Plaintiff faults Defendants for failing to include mention of A.O.M.'s emergency room visit in the neglect petition. (Pl.'s Objs. at 6.)

In his objections to the Report, Plaintiff also relies, for the first time, on a transcript of a hearing held in Plaintiff's family court proceedings. (*See generally,* Pl.'s Objs.) As noted by Defendants, the transcript constitutes extrinsic material not provided with Plaintiff's pleadings and, as such, is inappropriate for this Court's consideration on a motion to dismiss.[5] *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria,* 265 F.R.D. 106, 122–23 (S.D.N.Y. 2010) ("plaintiff may not shore up a deficient complaint through extrinsic documents submitted in opposition to a defendant's motion to dismiss") (citing *Wright v. Ernst & Young LLP,* 152 F.3d 169, 178 (2d Cir. 1998)). Even if such consideration were appropriate, however, the evidence from the hearing upon which Plaintiff relies—that Plaintiff's current partner described him as a "good father" who had never hit A.O.M. and that A.O.M. did not require medical attention following the alleged incident, (Pl.'s Objs. at 2)—does not contradict the information used to file the neglect petition and therefore does not show that the petition was based on "intentionally or recklessly false" submissions. Nor does the fact that the petition was ultimately dropped in itself demonstrate that the proceedings were brought for any "wrong or improper" purpose, as Plaintiff suggests throughout his objections, (*see generally,* Pl.'s Objs.), because "[w]ere it otherwise, the second and [fourth] elements of a malicious prosecution claim would be duplicative in most cases." *Emanuel,* 2015 WL 1379007, at *9 (citing *Broughton v. State,* 37 N.Y.2d 451, 457 (N.Y. 1975)).

Separately, the pleadings fail to satisfy the third element of a malicious prosecution claim, malice, which requires showing "a wrong or improper motive, something other than a desire to see the ends of justice served." *Fulton,* 289 F.3d at 198; *see also Lowth v. Town of Cheektowaga,* 82 F.3d 563, 573 (2d Cir. 1996). The TAC is utterly devoid of any non-conclusory allegation that Plaintiff's family court proceedings were motivated by malice. With no factual elaboration, the

---

[5] Accordingly, Plaintiff's request that this Court take judicial notice of the transcript, (Pl.'s Objs. at 8), is denied.

TAC's only relevant allegations baldly state that Defendants "acted maliciously," that their actions were "done … with malice," and that they "maliciously commenced" the family court proceedings. (TAC ¶ 74, 79, 91, 92.)   Such pleading amounts to nothing more than a bare recitation of the elements of a cause of action and is insufficient to survive a motion to dismiss.

Because Plaintiff fails to plead any facts showing that his family court proceedings were begun either with malice or without probable cause, his First Cause of Action is dismissed.[6]

## C.   Plaintiff's Catch-all Section 1983 Claim is Dismissed

Plaintiff's Second Cause of Action is raised pursuant to 42 U.S.C. § 1983 and alleges violations of his Fourth and Fourteenth Amendment rights.   This cause of action fails to provide Defendants, or this Court, notice regarding the substance of or factual basis for the claim and must therefore be dismissed.   It is well-established that "[s]ection 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).   Plaintiff must therefore be specific as to which of his constitutional rights were violated in order to provide Defendants with "fair notice of what the claim is and the grounds upon which it rests." *Leibowitz v. Cornell Univ.*, 445 F.3d 586, 591 (2d Cir. 2006).   Plaintiff claims that Defendants violated his constitutional rights when they "failed to intervene in each other's misconduct" and established a "falsified version of the facts surrounding the arrest and/or neglect petition of the Plaintiff," (TAC ¶¶ 80–88), but he has not shown how these harms are separate and apart from his other, more specific, claims for

---

[6] Because this Court finds sufficient probable cause to justify the initiation of the family court proceedings, it adopts the Report's finding that Defendant Alama is entitled to qualified immunity. (*See* Report at 26); *see also Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010) (officers are entitled to qualified immunity if they have probable cause to make arrests).   This Court also adopts Magistrate Judge Moses's recommendation that Defendants Hansell and Blaise be dismissed for Plaintiff's failure to plead non-conclusory facts suggesting that they had any involvement in the filing of the neglect petition. (Report at 26–28.)

malicious prosecution and failure to intervene (which he also alleges to be violations of his Fourth and Fourteenth Amendment rights). This claim is therefore dismissed, as Plaintiff has not adequately pleaded a plausible cause of action distinct from his remaining claims. *See Brandon v. City of New York*, 705 F.Supp.2d 261, 264, 268–69 (S.D.N.Y. 2010) (dismissing "catchall" claim for violation of "federal civil rights under the First, Fourth, Fifth, Eighth, and Fourteenth Amendments" for failing to "set forth a plausible cause of action" or provide fair notice).

**D.     Plaintiff's *Monell* Claim is Dismissed**

Plaintiff's sixth cause of action is for *Monell* liability based on deliberately indifferent policies, practices, and customs. (TAC ¶¶ 108–16). As an initial matter, Plaintiff's *Monell* claim must be dismissed because, for the reasons discussed above, he has failed to allege any underlying constitutional violation. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (*Monell* does not provide an independent separate cause of action against a municipality; rather, "it extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation").

Even if Plaintiff had sufficiently pled a constitutional violation, he still has not plausibly alleged a claim for *Monell* liability. In order to maintain a 42 U.S.C. § 1983 action against a municipal defendant, a plaintiff must identify a municipal "policy or custom" from which the alleged injury arose. *Monell v. Dep't of Social Svcs.*, 436 U.S. 658, 694 (1978). One of the ways courts have found allegations sufficient to establish a policy or custom is when "an act performed pursuant to a custom that has not been formally approved by an appropriate decisionmaker ... is so widespread as to have the force of law." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *see also Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir. 1996) (noting that "persistent and widespread" practices of city officials may constitute a municipal custom). A plaintiff may

also plead the existence of a custom or policy based on governmental reports documenting constitutional deficiencies or misconduct, *Felix v. City of New York*, 344 F. Supp. 3d 644, 658 (S.D.N.Y. 2018) (collecting cases), or "by citing to complaints in other cases that contain similar allegations," *Gaston v. Ruiz*, No. 17 Civ. 1252 (NGG) (CLP), 2018 WL 3336448, at *6 (E.D.N.Y. July 6, 2018). Finally, municipal liability can also be based on a showing of deliberate indifference to a recurring situation "where a local government is faced with a pattern of misconduct and does nothing, compelling the conclusion that the local government has acquiesced in or tacitly authorized its subordinates' unlawful actions." *Reynolds v. Giuliani*, 506 F.3d 183, 192 (2d Cir. 2007) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989)).

As the Report correctly notes, (*see* Report at 28), the TAC does none of these things. While Plaintiff makes conclusory allegations that the City of New York developed and maintained policies and customs exhibiting "deliberate indifference" to the rights of citizens, including by enacting a policy and custom of "filing false neglect petitions, breaking up families, and having good mothers and fathers arrested," as well as interviewing and forcing children into medical examinations without parental consent, (TAC ¶¶ 113, 115), he does not offer any examples of similar misconduct in other cases. As such, Plaintiff has offered no facts from which it can be inferred that the conduct complained of is "widespread," "pervasive," or part of a "pattern." His *Monell* claim therefore fails.

## E.     This Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's State Law Claims

Having dismissed claims over which this Court has original jurisdiction, this Court adopts the Report's recommendation and declines to exercise supplemental jurisdiction over Plaintiff's claims under Third, Fourth and Fifth Causes of Action brought under state law. (Report at 29.)

14

## IV.     CONCLUSION

Plaintiff's objections are OVERRULED and Magistrate Judge Moses's Report is ADOPTED in full. Defendant's motion to dismiss, (ECF No. 76), is GRANTED.[7] The Clerk of the Court is directed to close the motion accordingly.

Dated: September 21, 2022
      New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[7] This Court agrees with Magistrate Judge Moses's recommendation that leave to amend should be denied, as Plaintiff has already had multiple opportunities to correct his pleading deficiencies. (Report at 29–30.)